**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **DAVID A. TRICE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 5:11-CV-323(MTT)** |
| ) | |
| **MICHAEL B. DONLEY, SECRETARY,** ) | |
| **DEPARTMENT OF THE AIR FORCE,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## ORDER

This case is before the Court on the Defendant's Motion for Summary Judgment.
(Doc. 13).  For the following reasons, the Motion is **GRANTED**.

### I.  PROCEDURAL HISTORY

On November 20, 2008, Plaintiff David Trice conducted an initial interview with
an Equal Employment Opportunity Commission counselor complaining of racial
discrimination, continuous harassment and the creation of a hostile work environment
by his direct supervisor, Yamaan Robinson.  On February 11, 2009, Trice filed a formal
complaint with the EEOC alleging the original claims made in his initial interview as well
as an allegation of discrimination based on reprisal stemming from the initial EEOC
complaint.  On February 20, 2009, Trice amended his formal complaint to include
additional allegations of harassment and reprisal by Robinson.  A hearing was held
before the EEOC Administrative Judge, Lana Layton, on March 3, 2010, resulting in an
Order Entering Judgment in favor of the Air Force on June 9, 2011.

On August 19, 2011, Trice filed his complaint asserting claims for: (1) disparate treatment on the basis of race and (2) retaliation for filing a complaint with the EEOC. According to Trice, the Defendant's conduct violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").  The Defendant seeks summary judgment on both claims.

## II.  STATEMENT OF FACTS

Plaintiff David Trice, a Caucasian male, has been employed at Warner Robins Air Force Base in Warner Robins, Georgia since approximately October 1998.  In July 2008, Trice interviewed for a position as a Material Expediter Work Leader.  Yamaan Robinson, an African-American male, was on the interview panel and subsequently became Trice's first-line supervisor when Trice was promoted into that position.  Since the events in question, Trice has been removed from his prior position as a Work Leader under Robinson's supervision and placed into a new unit under a new supervisor.

### A.    The Alleged Disparate Treatment and Events Leading Up to Trice's Initial Interview with the EEOC

Trice alleges that he was treated and disciplined differently than Lindsley Scott, an African-American employee in Trice's unit.  Scott made an offensive remark (stating "FU") to Robinson immediately after Robinson gave Scott an oral admonishment for failure to follow orders from Trice, who was acting as Scott's supervisor at the time. (Doc. 13-2 at ¶ 35).  Shortly thereafter, on August 26, 2008, Trice made a written statement against Scott regarding the offensive remark, which he perceived as a threat. (Doc. 16-13 at 21:10-14).  Two days later, on August 28, Trice made a new written statement recanting his statement of August 26 and requesting to attend anger

management class.  (Doc. 15-2).  Trice alleges that the August 28 statement was coerced and made under duress from Robinson because Robinson did not want to appear incompetent to his supervisors.  (Doc. 16-13 at 46:1-19).  Robinson decided to leave Scott with a verbal warning, even though Scott lied to Robinson about making the comment.  Robinson contends that he did not perceive the remark to be threatening and decided not to pursue further discipline regarding the matter.  (Doc. 13-2 at ¶ 35; Doc. 16-8 at 132:3-14).  Shortly after being asked to recant his statement against Scott, Trice claims Robinson also threatened to have Trice removed within two years if he went to the EEOC.  (Doc. 16-13 at 21:20-24).

On October 27, Trice received a reprimand for making inappropriate comments. (Doc. 13-2 at ¶ 17).  Trice alleges that his statements were taken out of context, and the actual reason for his reprimand was doubtlessly his recent conflict with his co-worker, Scott.  (Doc. 16-13 at 66:1-12).  Trice first made contact with the EEOC on November 20 regarding the alleged harassment and discrimination by Robinson.  (Doc. 13-2 at ¶ 4).

### B.   Trice's Removal of Paperwork From Robinson's Desk

On December 1, 2008, Robinson was preparing a response to Trice's informal EEOC complaint when his direct supervisor, Stanley Knight, called Robinson away from his desk.  (Doc. 13-2 at ¶ 6).  According to Trice, he entered his shared office with Robinson and found his uncovered EEOC complaint laying face up on Robinson's desk as well as an e-mail from Robinson on his computer screen questioning how to remove Trice from his position.  Trice contends that the complaint and e-mail were easily visible to his co-workers coming and going from the office.  (Doc. 16-13 at 36-37).  Robinson,

however, alleges that he placed the EEOC complaint upside down in a basket and covered it with a Privacy Act Sheet as well as other paperwork so that it was not visible. (Doc. 13-2 at ¶ 7; Doc. 13-7).

Robinson further alleges that upon reentering the office he found Trice "with his hands in his jacket as if he were hiding something."  (Doc. 13-2 at ¶ 8).  Elsewhere, Robinson has stated that he witnessed Trice standing by Robinson's desk and placing papers into his jacket.  (Doc. 13-7).  Trice contends that he did not have contact with Robinson until he was out of the office and on his way to the parking lot.  (Doc. 16-13 at 36-37).  In any event, Trice eventually admitted to removing the paperwork from Robinson's desk.  Before removing it, Trice says he contacted his union representative who advised him to remove the paperwork if it was in fact uncovered.  (Doc. 15-12 at 2).  Trice did not tell Robinson that he removed the paperwork, and Robinson reported the paperwork as missing to his supervisor.  (Doc. 13-2 at ¶¶ 8 and 13).

### C.    The Pen-Throwing Incident

Robinson alleges that he witnessed Trice throw a pen across the room and call his co-workers idiots.  (Doc. 13-2 at ¶ 14).  Robinson wrote a memo for the record referencing Wednesday, December 3, 2008 as the date of the incident.  (Doc. 16-11 at 1).  The memo also referenced "DRMO day,"[1] an activity that only occurs on Wednesdays.  (Doc. 16-11 at 1).  Upon learning of the memo's existence through the Notice of Proposed Suspension, Trice told his fourth-level supervisor, Connell McCaa, that he was not at work on December 3 and provided him with supporting documentation.  (Doc. 16-13 at 71:13-20; Doc. 16-14).  Robinson contends that he

---

[1] Defense Reutilization and Marketing Office (DRMO) occurs when the employees take scrap metal to a designated facility.  (Doc. 16-8 at 149:12-14).

misdated the memo and changed the date to December 4 after Trice provided the documentation of his absence on the prior day.  (Doc. 13-2 at ¶ 19; Doc. 16-15 at 1).

### D.  Three-Day Suspension

On January 5, 2009, Trice received a Notice of Proposed Suspension for three days without pay from McCaa, an African-American male.  The Notice charged Trice with inappropriate behavior for the removal of the EEOC paperwork and the pen-throwing incident.  McCaa also noted Trice's prior disciplinary action on October 27, 2008, for inappropriate comments and took that reprimand into consideration when proposing the suspension.  (Doc. 13-12).  McCaa met with Trice and his union representative on January 21 concerning the proposed suspension.  (Doc. 13-13).  On January 29, McCaa notified Trice of the date correction regarding the pen throwing incident.  (Doc. 13-14).  Trice received a final Notice of Decision to suspend for three days on February 11 and was suspended February 25-27.  (Doc. 13-2 at ¶ 20).

Prior to making the final decision to suspend, McCaa took into consideration a recommendation received from a Human Resources Specialist at Robins Air Force Base, April Haskins.  Haskins reviewed the table of penalties for discipline and adverse actions for civilian personnel and recommended a three-day suspension.[2]  After Trice received his final Notice of Decision to suspend, he amended his formal EEOC complaint to include a retaliation claim based on the three-day suspension.  (Doc. 13-2 at ¶¶ 21 and 23).

---

[2] Haskins also considered Trice's past disciplinary action, the memos for record, and whether the proposed suspension was consistent with other disciplinary actions on a base-wide level.  Based on the table of penalties, Haskins determined that the appropriate penalty range for a second offense of discourteous conduct ranged from a reprimand to a fourteen day suspension.  (Doc. 16-8 at 99:2-19; 104:13-23).

### III. Discussion

**A.     Summary Judgment Standard**

Summary judgment must be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).  Further, the burden rests with the moving party to prove that no genuine issue of material fact exists.  *Info Sys. & Networks Corp.*, 281 F.3d at 1224.  The district court must "view all evidence in the light most favorable to the nonmoving party, and resolve all reasonable doubts about the facts in its favor."  *Id*.

**B.     Causes of Action**

**1.     *McDonnell Douglas* Framework**

Trice relies on circumstantial evidence and the framework for analyzing circumstantial evidence first applied in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to establish a prima facie case of discrimination.  Under the *McDonnell Douglas* test, a plaintiff must first establish a prima facie case of discrimination, the test for which differs slightly for each of Trice's claims.  If a plaintiff establishes a prima facie case of discrimination, the burden of production, but not the burden of persuasion, shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action.  *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981).

The burden then returns to the plaintiff to prove that the employer's reasons are a pretext for discrimination. *Id.* at 253. The employee can meet this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer *or* indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (emphasis added).[3]  If the proffered reason is one that might have motivated a reasonable employer, the employee "must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000). If a defendant

---

[3] There is some confusion regarding a plaintiff's burden to prove pretext.  Citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993), some cases suggest that a plaintiff responding to an employer's motion for summary judgment must prove that the employer's legitimate, nondiscriminatory reason is false *and* that discrimination was the real reason for the employer's action.  *See Upshaw v. Ford Motor Co.*, 576 F.3d 576, 587 (6th Cir. 2009); *Maxfield v. Cintas Corp. No. 2,* 427 F.3d 544, 550-51 (8th Cir. 2005).  However, the Supreme Court in *St. Mary's* did not address a plaintiff's burden at the summary judgment stage.  Rather, the Court addressed whether an employee is entitled to judgment as a matter of law when the factfinder has concluded that the employer's nondiscriminatory reason is false, but nevertheless found that the employer did not intentionally discriminate against the plaintiff.  Moreover, as noted by Judge Wilson in his concurring opinion in *Convoy v. Abraham Chevrolet-Tampa, Inc.,* 375 F.3d 1228, 1236 (11th Cir. 2004), the Supreme Court in *St. Mary's* "flatly rejected the so-called 'pretext-plus' approach to discrimination analysis, which had required the plaintiff not only to demonstrate that the employer's asserted reasons were pretextual, but also to introduce additional evidence of discrimination."  In *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133 (2000), the Supreme Court disposed of any lingering viability of pretext-plus analysis.  While it is true the plaintiff must ultimately prove intentional discrimination, "it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation."  *Id.* at 147 (emphasis in original).  In a concurring opinion, Justice Ginsburg, in a summary of the majority's holding, wrote that a plaintiff "*may* survive judgment as a matter of law by submitting two categories of evidence:  first, evidence establishing a 'prima facie case,' …; and second, evidence from which a rational factfinder could conclude that the employer's proffered explanation for its actions was false."  *Id.* at 154 (emphasis in original); *see also Dulin v. Bd. of Com'rs of Greenwood Leflore Hosp.*, 657 F.3d 251 (5th Cir. 2011).  Clearly, at the summary judgment stage, the plaintiff, in rebutting the employer's proffered legitimate, nondiscriminatory reason, does not shoulder the burden of producing evidence both of falsity and that the real reason was discrimination.  Indeed, the *McDonnell Douglas* test is all about proving intentional discrimination by circumstantial evidence; if the employee had direct evidence that the real reason for the adverse employment action was discrimination, the employee would have no need to resort to the *McDonnell Douglas* test.

articulates more than one legitimate, nondiscriminatory reason, the plaintiff must rebut

each of the reasons to survive summary judgment.  *Id.* at 1037.  Thus, "[a] plaintiff

withstands summary adjudication by producing sufficient evidence to allow a reasonable

finder of fact to conclude that the defendant's articulated reasons for its decision are not

believable."  *Howard v. B.P. Oil Co., Inc.*, 32 F.3d 520, 526 (11th Cir. 1994).

### 2.    Disparate Treatment Claim

Generally, Title VII makes it unlawful for an employer to "fail or refuse to hire or to

discharge any individual, or to otherwise discriminate against any individual with respect

to his compensation, terms, conditions, or privileges of employment, because of such

individual's race."  42 U.S.C. § 2000e-2(a)(1).  To establish a prima facie case of

disparate treatment under Title VII, Trice must show that (1) he is a member of a

protected class; (2) he was qualified for his position; (3) he suffered an adverse

employment action; and (4) he was treated less favorably than a similarly situated

individual who is not a member of his protected class.  *McCann v. Tillman*, 526 F.3d

1370, 1373 (11th Cir. 2008).  Trice alleges that he was disciplined differently and less

favorably than similarly situated non-Caucasian employees.  The Defendant does not

dispute that Trice can satisfy elements one, two, and three of his prima facie case: he is

a member of a protected class, he was qualified for his position, and he suffered an

adverse employment action.  Thus, only the fourth element remains in dispute.

The final element of Trice's prima facie case requires him to demonstrate that he

was treated less favorably than a similarly situated employee who is not a member of

his protected class.  It is not enough to simply show that he "belongs to a protected

class and that [he] did not violate [his] employer's work rule."  *Jones v. Bessemer*

*Carraway Med. Ctr.*, 137 F.3d 1306, 1311 n.6 (11th Cir. 1998), *superseded in part by* 151 F.3d 1321 (11th Cir. 1998).  Instead, Trice must identify an employee outside his protected class to whom he is "similarly situated in all relevant respects."  *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).  "[T]o determine whether employees are similarly situated, we evaluate whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways."  *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999).  "[T]he quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."  *Id*.  In making this determination, courts must be mindful that "Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules."  *Id.* at 1369 (internal quotations and citation omitted).

Trice identified African-American male Scott as the similarly situated employee who was treated more favorably.  Trice alleges that management cited Scott for two separate acts of inappropriate behavior, but he received less severe discipline.  The first incident involved "belligerent" behavior, cursing, and disrespecting his work leader, Trice.  (Doc. 16-8 at 74:13-15).  The second incident involved Scott telling his first-line supervisor, Robinson, "FU."  When confronted by Robinson about the comment, Scott denied making it and refused to sign the oral admonishment.  Trice contends lying about the comment and refusing to sign the oral admonishment should have counted as two additional offenses by Scott for a total of four offenses.  As a result of the two incidents cited by management, Scott received an oral admonishment left in his record for one year.

Trice attempts to characterize both his and Scott's accused behavior as the same or similar conduct because the "behavior involved allegations of dishonesty and loss of temper." (Doc. 16-1 at 14). Trice contends this characterization is correct because removing the paperwork from Robinson's desk was an allegedly dishonest act, and he allegedly lost his temper when he threw the pen. Trice argues Scott was also dishonest when he denied the comment he made to Robinson and lost his temper, like Trice, while cursing. The Defendant argues that Scott is not a suitable comparator given Robinson's supervisory history of Trice. At the EEOC hearing, Robinson testified to prior instances of inappropriate or disrespectful behavior by Trice where Robinson decided not to take action. Robinson also testified to Trice's history of problems with his co-workers. When questioned about his decision to leave Scott with an oral admonishment rather than write him up for an additional infraction for the offensive remark, Robinson stated that it was routine for him to handle first-time infractions against him in that manner. (Doc. 16-8 at 156-157; 161-162).

The Court finds that Scott is not a proper comparator. The alleged misconduct of Trice and Scott is not "nearly identical," and Trice cannot characterize it as such by grouping the misconduct into broader categories. The record shows that the Defendant's management believed Trice's removal of the paperwork from Robinson's desk and his prolonged failure to admit taking the paperwork to be an act of deception and an attempt to get Robinson in trouble. (Doc. 13-13). Although Scott may have lied about saying "FU" to Robinson, Robinson and his supervisors clearly viewed taking and not returning paperwork from a supervisor's desk as a more serious infraction. Trice contends that the alleged verbal outbursts of himself and Scott are sufficiently similar,

but Scott's outburst was not accompanied by throwing anything.  Furthermore,

Robinson's decision to write-up Trice for his infractions rather than giving him verbal

warnings was influenced by prior conflicts between himself and Trice.  Accordingly,

Trice has failed to identify a comparator or to direct the Court to any other circumstantial

evidence that race-based discrimination played a role in his suspension.[4]  The

Defendant is therefore entitled to summary judgment on this claim.  *Holifield*, 115 F.3d

at 1562 (holding that summary judgment is appropriate if the plaintiff fails to identify a

similarly situated employee and no other evidence of discrimination is present).

   Even assuming that Trice proved a prima facie case of disparate treatment, he

has failed to prove that the Defendant's proffered reasons for his suspension were

pretextual.  Trice argues that Scott's behavior was in fact worse than his because Scott

did not act with any "perceived authority or permission," referring to the authorization

Trice contends that he received from his union representative to remove the EEOC

complaint from Robinson's desk.  Trice also contends that there was "no other plausible

explanation" given the difference in discipline between Scott and Trice because

Robinson does not use an employee's "level of responsibility" in deciding how to

discipline an employee.  These arguments are without merit.

   First, McCaa knew of Trice's "perceived authority" to remove the paperwork from

Robinson's desk when McCaa made his final decision to suspend.  However, McCaa

also considered Trice's failure to address the alleged privacy act violation with

Robinson, return the paperwork, or respond to all of McCaa's questions regarding the

---

[4] The Defendant also pointed to Alvin Lewis, an African-American male, who received a three-day suspension for disrespectful behavior toward Trice to further demonstrate that Trice's disparate treatment claim is unfounded.  In his response, Trice did not rebut the Defendant's argument regarding Lewis and focused on Scott as his sole comparator.

matter.  Second, Robinson has provided a plausible explanation as to why he chose to verbally discipline Scott while writing-up Trice.  Robinson stated that Scott's "FU" comment and subsequent denial of making the comment were his first infractions against Robinson, while Robinson had prior conflict with Trice.  Robinson testified that he preferred to handle first-time infractions directed against him verbally and monitor the employee's behavior afterwards to see if further action was warranted.  Even though Scott and Trice had prior disciplinary history and received different disciplines for subsequent infractions, Trice has not sufficiently rebutted the Defendant's showing that the underlying circumstances of the infractions were sufficiently dissimilar to warrant different disciplines.  Trice cannot succeed in showing the Defendant's reasons for suspending him were pretextual by "simply quarreling with the wisdom of [those reasons]." *Chapman*, 229 F.3d at 1030.  "[F]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions." *Id.* (internal quotations and citation omitted).  The Defendant has given an explanation for its decision to suspend Trice.  Although Trice may disagree with the Defendant's stated reason for suspending him, he has not put forth sufficient evidence to show that the Defendant's explanation is unworthy of credence.  Accordingly, having failed to establish that the Defendant's explanation was pretext, the Defendant is entitled to summary judgment on Trice's Title VII disparate treatment claim.

### 3.    Title VII Retaliation Claim

Under Title VII, an employer may not retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any

manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C.

§ 2000e-3(a).  To establish a prima face case of retaliation, a plaintiff must show that (1)

he engaged in statutorily protected expression; (2) he suffered an adverse employment

action; and (3) the adverse action was causally related to the protected expression.

*Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1233 (11th Cir. 2006).

If a plaintiff makes out a prima facie case of retaliation, the burden shifts to the employer

to articulate legitimate reasons for the adverse employment action, and, if the employer

does so, a plaintiff has the ultimate burden of showing by a preponderance of the

evidence that the employer's reasons were pretextual.  *Holifield*, 115 F.3d at 1564-66.

Trice alleges that after Robinson became aware of Trice's EEOC complaint,

Robinson retaliated against Trice by reporting two disciplinary incidents to senior

management (i.e. the pen-throwing incident and taking paperwork from Robinson's

desk), ultimately resulting in Trice's suspension.  The Defendant does not dispute that

Trice has established the first two elements of a retaliation claim.  Trice's EEOC

complaint alleging discrimination on the basis of race is statutorily protected speech.  A

three-day suspension without pay would constitute an adverse employment action.  The

only remaining inquiries for the Court are whether there is a causal link between the

adverse employment action and Trice's protected speech and, if so, whether the

legitimate, nondiscriminatory reasons alleged by the Defendant are merely pretextual.

The final element of Trice's prima facie case requires him to prove a causal link

between the protected activity and the adverse employment action.  A causal link can

be established by showing that "the protected activity and the adverse action were not

wholly unrelated."  *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir.

1999).  Generally, to show that the two are not wholly unrelated, a plaintiff must show "that the decision maker was aware of the protected conduct at the time of the adverse employment action" and a close temporal proximity between the protected activity and the adverse action.  *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000).  Although close temporal proximity can be sufficient to create an issue of fact regarding the causal connection prong of the prima facie case, "temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct."  *Id.* (citation omitted).

Robinson first became aware of Trice's protected conduct (i.e., his EEOC complaint) on November 25, 2008.  Robinson cited Trice for the alleged pen-throwing incident in a memo dated December 3, although the date was eventually changed to December 4.  Robinson cited Trice a second time on December 15 for his removal of the paperwork from Robinson's desk on December 1.  Trice received a Notice of Proposed Suspension issued by McCaa on January 5, 2009.  As Knight, Trice's second-line supervisor, presented McCaa with the facts prior to the issuance of the Notice of Proposed Suspension, the record shows that McCaa, the final decision maker, knew that Trice engaged in protected conduct.  Although the Defendant argues that "the evidence fails to show any connection" between Trice's EEOC complaint and the actions taken by his management, the Defendant has not rebutted Trice's argument that temporal proximity existed between Robinson's initial awareness of the EEOC complaint and Robinson's reporting of the two disciplinary incidents.  As Robinson's first write-up of Trice took place eight days after Robinson became aware of the complaint

filed against him, there is close temporal proximity between the employer's knowledge of the protected conduct and the adverse employment action.  Thus, Trice has sufficiently established the third element of his retaliation claim.

As Trice has established a prima facie case of retaliation, the Defendant must offer legitimate, nonretaliatory reasons for suspending Trice under the *McDonnell Douglas* framework.  Here, the Defendant has offered evidence that the decision to suspend was based on multiple instances of alleged inappropriate behavior rather than retaliation.  The record shows that McCaa based his decision to suspend on: (1) the pen throwing incident; (2) the removal of the paperwork from Robinson's desk; (3) prior disciplinary action taken against Trice on October 27, 2008, for making inappropriate comments; and (4) a recommendation concerning appropriate punishment from Haskins.  When making her recommendation, Haskins reviewed the Air Force's table of penalties, Trice's past disciplinary action, the memos for record regarding the pen-throwing and paperwork removal incidents, and whether the proposed suspension was consistent with other disciplinary actions on a base-wide level.  Furthermore, Trice met with McCaa to discuss the proposed suspension prior to the final decision to suspend. Although Trice submitted documentation to McCaa rebutting the occurrence of the pen-throwing incident, Trice would not explain to McCaa why he had not discussed the alleged privacy act violation with Robinson.  McCaa's final decision to suspend took into account Trice's explanations (or lack thereof) at the meeting.  Accordingly, the presumption of retaliation is rebutted, and Trice must actually show that the Defendant's legitimate, nondiscriminatory reasons are pretext.

As noted above, Trice may carry his burden of establishing that the Defendant's proffered reasons for his suspension were pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer *or* indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256; *Combs*, 106 F.3d at 1528 (emphasis added).  The district court must consider "whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quotation omitted).  A plaintiff can demonstrate evidence of pretext through the identification of a defendant's inconsistent statements, but the "mere denial of credibility" has no evidentiary value. *Howard*, 32 F.3d at 526.  "[A] plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable." *Id.*

Trice has identified inconsistent statements by Robinson regarding both of the disciplinary actions underlying McCaa's decision to suspend.  Regarding the removal of the paperwork from Robinson's desk, Robinson initially stated that Trice was "standing at [his] desk placing papers in his jacket." (Doc. 16-6).  Robinson later stated in his EEOC affidavit that Trice was "standing in front of [his] desk with his hands inside his jacket pocket" and confirmed at the EEOC hearing that he did not actually see Trice remove the paperwork.  (Doc. 16-7 at 4; Doc. 16-8 at 138:2-5).  However, Trice eventually admitted to removing the paperwork from his supervisor's desk but failed to

explain to McCaa his reasons for not bringing the alleged privacy act violation to
Robinson's attention.  Trice contends that he had permission from his union
representative to remove the paperwork if it was in fact uncovered with a privacy act
sheet, as Trice alleges.  Robinson has maintained that he covered the paperwork prior
to leaving his office.

Ultimately, Trice took the paperwork, and whether Robinson actually witnessed
him take it is not an issue of material fact.  Trice cannot succeed in showing the
Defendant's management's reasons for their actions are pretextual by simply quarrelling
with the wisdom of those reasons.  The appropriate inquiry for this Court is not whether
Trice was actually guilty of misconduct, but whether the Defendant gave an honest
explanation for its behavior and whether the stated reasons are ones that might
motivate a reasonable employer.  *Chapman*, 229 F.3d at 1030-31 (11th Cir. 2000).
Trice never admitted to taking the paperwork until his meeting with McCaa (over a
month after the incident) and never brought the alleged privacy act violation to the
attention of any supervisor in the interim.  A reasonable employer could have
interpreted Trice's actions as intentionally deceptive and would be justified in
disciplining Trice for such behavior.  Although Trice may disagree with the Defendant's
decisions and interpretation of his behavior pertaining to taking the paperwork, he has
not put forth sufficient evidence to show that their explanations are unworthy of
credence. Thus, such inconsistencies in Robinson's statements are immaterial
regarding the use of this charge in McCaa's decision to suspend.

Trice has also identified several inconsistencies in Robinson's statements
regarding the pen-throwing incident.  Robinson's memo for record twice cites December

3, 2008, as the date of the event.  Robinson, however, did record the precise time of "0918a.m."  Robinson also wrote in his memo that he told Trice, after throwing the pen, that "today is DRMO day things are a little crazy."  (Doc. 16-11).  Robinson did not change the date of the memo to December 4 until after Trice gave documentation to McCaa showing that he was not at work on December 3.  Trice has established both that he was absent on the date of the alleged incident and that DRMO days only occur on Wednesdays, which would have been scheduled for December 3 and not December 4.  The Defendant's only explanation to rebut these inconsistencies is that Robinson explained, at the EEOC hearing, that his comment regarding DRMO was merely an off-hand remark and that he had probably been confused about which day it was because he was also gone from work on Wednesday, December 3.  (Doc. 16-8 at 147:12-16).  Thus, Trice has created a genuine issue of fact as to whether this event occurred.

Even assuming Trice has shown this issue of fact exists and this legitimate, nondiscriminatory reason is pretext, Trice cannot withstand summary judgment on this claim.  Trice must show *each* legitimate, nondiscriminatory reason offered by the Defendant for his single adverse employment action is pretext.  *See Mihoubi v. Caribou Coffee Co.*, 288 Fed. Appx. 551 (11th Cir. 2008) (affirming summary judgment when the plaintiff could show that only one out of the defendant's three legitimate, nondiscriminatory reasons for the plaintiff's termination was pretext).[5]  Trice has not successfully rebutted the other legitimate, nondiscriminatory reasons proffered by the Defendant.

---

[5] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. R. 36-2.

Accordingly, the Defendant is entitled to summary judgment on Trice's Title VII retaliation claim.

## IV. Conclusion

For the foregoing reasons, the Defendant's Motion for Summary Judgment is **GRANTED**.


**SO ORDERED**, this the 26th day of September, 2012.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT